U.S. BANKRUPTCY COURT
District of South Carolina

Case Number: 09-02436

ORDER ON NATIONAL BANK OF SOUTH CAROLINA'S MOTION FOR RELIEF
FROM STAY

The relief set forth on the following pages, for a total of 9 pages including this page,
is hereby ORDERED.

**FILED BY THE COURT**
**05/22/2009**



US Bankruptcy Court Judge
District of South Carolina

Entered: 05/22/2009

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | Case No. 09-02436-dd |
| Riverfront Properties, LLC, ) | |
| ) | |
| Debtor. ) | |
| ) | |

ORDER ON NATIONAL BANK OF SOUTH CAROLINA'S
MOTION FOR RELIEF FROM STAY

THIS MATTER is before the Court on the motion of National Bank of South Carolina (NBSC or Movant) for relief from the automatic stay of 11 U.S.C. § 362[1] and the objection thereto filed by the Debtor. The Court has jurisdiction of this contested matter pursuant to 28 U.S.C. § 1334. The motion is a core proceeding. 28 U.S.C. § 157(b)(2)(G).

FINDINGS OF FACT

Riverfront Properties, LLC (Riverfront or Debtor) filed a petition for relief under chapter 11 of the Bankruptcy Code on March 31, 2009. Riverfront's sole member is Anthony A. Kokolis (Kokolis). Riverfront owns two parcels of real estate on Alexander Road in West Columbia, S.C., overlooking the Congaree River. New Orleans Riverfront Properties, LLC (New Orleans) operates a restaurant on Riverfront's property. New Orleans' members are Kokolis, his son and his daughter. Riverfront's only income is from a parol agreement with New Orleans for rent payments.

Riverfront owed NBSC $1,696,923.41 as of the date of the bankruptcy petition. This debt, arising from a series of notes and renewals, is secured by mortgages on the two parcels owned by Riverfront and on a home and lakefront real estate owned by Kokolis. Kokolis has guaranteed payment of some or all of the NBSC debt.

---
[1] Further reference to the Bankruptcy Code, 11 U.S.C. § 101 et. seq., will be by section number.

NBSC initiated a foreclosure action against Riverfront and Kokolis and obtained a judgment of foreclosure and order for sale in January 2009. The foreclosure auction of the Riverfront properties was conducted on March 2, 2009; however, because a deficiency judgment was not waived, the sale remained open under state law. The judgment of foreclosure and order for sale were entered by consent of the parties and provided for an initial sale of the Riverfront properties and a subsequent sale of the Kokolis real estate in the event the NBSC debt was not paid in full. NBSC was the high bidder for the Riverfront property at $1,450,000. Bidding on the Riverfront property was to reopen on April 1, 2009 but was stayed upon Riverfront's bankruptcy filing.

New Orleans' agreement with Riverfront was to pay the NBSC mortgage payment in return for the use of the premises. New Orleans' and Riverfront's business affairs are significantly intertwined. In fact, New Orleans executed some of the promissory notes and mortgages to NBSC[2] and the two entities filed consolidated tax returns. New Orleans stopped paying NBSC after the December 2007 payment. New Orleans suffered significant business problems, described as largely attributed to management failures. Family members have now assumed management of the restaurant and the restaurant is again producing a profit, exceeding projections in April and to-date in May, 2009.

Riverfront has offered adequate protection payments to NBSC in the amount of $8,000 per month plus one-half of the net profits. Additionally Riverfront has agreed to set aside $2073 each month to fund payment of the 2009 ad valorem property taxes. The financial projections and actual performance for the two most recent months suggest that Riverfront will have these funds. The testimony at the hearing was that $8,000 is a market rate of rent.

---

[2] A subsequent "Ratification Agreement" corrected the name of the borrower and mortgagor as Riverfront.

The Riverfront property was previously sold at a property tax sale by Lexington County. The statutory redemption period has not expired. Riverfront is seeking permission to borrow the funds necessary to redeem the property pursuant to state law. The funds will be borrowed from Kokolis, who in turn is borrowing against a life insurance policy to secure the funds. The motion to borrow is on a future calendar.

Finally, NBSC believes the value of the Riverfront property to be $1.45 million, evidenced by its foreclosure bid. It also believes the Kokolis property to be worth $600,000. Riverfront argues that its property is worth as much as $3.4 million and Mr. Kokolis testified that his opinion of the value of his property was $1.75 million. Debtor's certification of facts provided a value of $1.2 million of the Kokolis property.

## CONCLUSIONS OF LAW

NBSC seeks relief from stay as to the Riverfront property pursuant to § 362(d)(1) for cause, including a lack of adequate protection. It contends that the real estate is worth less than it is owed and that the offered adequate protection is not sufficient and will not actually be forthcoming. NBSC also contends that its foreclosure sale was completed before the filing of the bankruptcy petition (other than for the ministerial act of the selling officer filing a deed) and that Riverfront therefore has only bare legal title. NBSC seeks relief as to the Kokolis property pursuant to § 362(d)(2) and argues that the Debtor has no equity in Kokolis' property and that it is not necessary to an effective reorganization.

Riverfront contends that NBSC is adequately protected by an equity cushion in the combined Riverfront and Kokolis properties. Additionally, Riverfront contends that its offer of $8,000 per month, one-half of the net profits and an escrow of property taxes for 2009 is

sufficient to protect NBSC. It also argues that the Kokolis property is essential to the reorganization process because Mr. Kokolis will be providing the funds to redeem the Riverfront property from a tax sale and may make additional financial accommodations. Finally it argues that foreclosing on the sole member's personal residence would detract from the reorganization efforts.

Riverfront's Interest

The threshold issue is whether the foreclosure sale terminated Riverfront's interest in the two parcels of real estate, leaving it with bare legal title which would be extinguished upon the performance of mere ministerial acts by the judicial sales officer.[3] This Court has previously considered the issue. *See In re Watts*, C/A No. 00-06791-W (Bankr. D. S.C. 10/30/2000); *In re Holmes*, C/A No. 99-08796-W (Bankr. D. S.C. 11/23/1999); *Commonwealth Mortgage Co. v. Brown (In re Brown)*, C/A No. 87-02507-B, Adv. Pro. 87-0281-B (Bankr. D. S.C. 1/28/1988); *Agripen Grain Co. v. Peacock Fruit & Cattle Co. (In re Agripen Grain Co.)*, C/A No. 83-03606; Adv. Pro. 86-0413-D (Bankr. D. S.C. 7/31/1987). In each of these cases the Court determined that the property sold at a pre-petition foreclosure sale was not property of the estate (the estate held only bare legal title) and the stay should be terminated to allow completion of the sales process. The Court in these cases followed the rule that the sale is over when the hammer falls. *See Abdelhaq v. Pflug*, 82 B.R. 807, 810 (E.D. Va. 1988).

South Carolina law provides that foreclosure sales "shall not be closed upon the day of sale but shall remain open until the thirtieth day after such sale, exclusive of the day of sale." § 15-39-720 Code of Laws of South Carolina (2005 Rev.). This is the case unless a

---

[3] This issue also comes up frequently in chapter 13 cases, formed in connection with the permissible contents of a plan for the purpose of curing pre-petition defaults. See § 1322(c) and Keith M. Lundin, Chapter 13 Bankruptcy, 3d Ed. § 130.1 (2000 & Supp 2004).

deficiency judgment is waived, in which case the sale does not remain open. § 15-39-760. The sales procedure is explained as follows: "In situations in which a deficiency judgment is sought, the bidding will not close on the date of sale but will remain open until the thirtieth day after the sale. Any person other than the mortgagee or the high bidder at the sale, or anyone acting as their representative, may enter a higher bid in the intervening period. The successful bidder will be the person who submitted the last highest bid during the period." 27 S.C. Juris. Mortgages § 139. It appears, although it is not clear, that either a deficiency judgment was waived or the 30 day period had passed before the bankruptcy case was filed in each of this Court's decisions discussed in the previous paragraph.

Where, as here, a deficiency judgment is not waived, state law requires that: "The bidding shall be reopened by the officer making the sale on the thirtieth day after the sale, exclusive of the day of the sale, at eleven o'clock in the forenoon and the bidding shall be allowed to continue until the property shall be knocked down in the usual custom of auction to the successful highest bidder complying with the terms of sale. The sales officer shall announce the sales about to be closed and shall receive the final bids in such sales in the order determined by him." § 15-39-720. Because the bidding is reopened, the hammer does not fall on a foreclosure sale when deficiency judgment is not waived until the sales officer closes the sale on the thirtieth day. The high bidder on the first day of sale has no right that cannot be extinguished by a subsequent bidder and thus no rights or obligations arise in the first day bidder that diminish the title of the mortgagor. Riverfront thus held more than bare legal title on the date it filed bankruptcy.

Adequate Protection – Riverfront Property

"Adequate protection" is a term of art frequently used in bankruptcy cases. Its essence is the protection of another party's interest in property used by debtors. A mortgagee with an allowed secured claim is entitled to adequate protection of its interest in real property used by a debtor in a reorganization proceeding to the extent of the decrease in the value of the creditor's interest occasioned by such use. Section 361 of the Bankruptcy Code provides a non-exhaustive list of methods for providing adequate protection.

Here NBSC has a lien on property of the bankruptcy estate and on property of Kokolis, the guarantor of its loans to Debtor. The value of the parcels of real estate exceeds the debt owed NBSC, even by NBSC's estimates. Additionally Debtor has offered periodic payments of $8,000, the escrow for 2009 property taxes and a share of the net profit of the restaurant operated on the property. While the restaurant is owned by another entity, New Orleans traditionally made the lease payments owed to Debtor directly to NBSC. Essentially New Orleans and Riverfront are one family owned enterprise. The combination of the equity cushion afforded by the Riverfront and Kokolis properties and the periodic payments adequately protect NBSC's interest in the Riverfront real property.

Stay as to Kokolis property

NBSC seeks relief from the stay pursuant to § 362(d)(2) in order to pursue foreclosure of the Kokolis real property. Riverfront responds that relief should not be granted and that allowing NBSC to pursue the Kokolis property "would detract from the reorganizational process." Riverfront maintains that Kokolis' attention to the bankruptcy case is necessary because he is the managing member of the debtor, he has agreed to borrow funds from a life insurance policy and lend them to Riverfront for its use in redeeming the

two parcels from a pre-bankruptcy property tax sale, and that he may provide other financial accommodations.

As a preliminary matter, the § 362(a) stay does not protect the Kokolis property unless extended by the Court. The Fourth Circuit Court of Appeals has provided for such extensions of the stay.

> [I]n "unusual circumstances" a court, pursuant to § 362, may properly stay proceedings against nonbankruptcy co-defendants of the bankrupt debtor. Such unusual circumstances might arise where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor," or where proceedings against nondebtor co-defendants would reduce or diminish "the property of the debtor [such as the debtor's insurance fund or pool] to the detriment of the debtor's creditors as a whole.

*Credit Alliance Corp. v. Williams*, 851 F.2d 119, 121 (4th Cir. 1988)(citations omitted).

The Court in *Credit Alliance* was faced with a request to extend the stay to protect a guarantor of a note executed by the debtor-in-possession and it declined to do so, stating

> [t]here is nothing unusual about this guaranty agreement that would permit the guarantor, Williams, to invoke the statutory protection of § 362 or that would permit us to stay the enforcement of the New York judgment against him on equitable grounds. . . 'The very purpose of a guaranty is to assure the [creditor] that in the event the [debtor] defaults, the [creditor] will have someone to look to for reimbursement.'

*Credit Alliance,* at 121 -22.(citations omitted). In this instance there exist no "unusual circumstances" for extending the stay to Kokolis as a guarantor of Riverfront's debt or as a member of the LLC. The debtor-in-possession must necessarily bear the burden of proof on this issue and has not met the burden.

The Fourth Circuit has also recognized the application of § 105 to protect non-debtor parties. *See Oberg v. Aetan Cas. & Sur. Co. (In re A. H. Robins Co., Inc.)*, 828 F.2d 1023 (4th Cir. 1987); *Willis v. Celotex Corp.*, 978 F.2d 146 (4th Cir. 1992); *Dalkon Shield*

*Claimants Trust v. Reiser (In re A. H. Robins Co., Inc.),* 972 F.2d 77 (4th Cir. 1992). These cases arise on unique facts and implicate preservation of judicial resource concerns. Allowing NBSC to pursue its guaranty or the foreclosure of the Kokolis property does not open the floodgates of litigation or require such extensive time of the guarantor as to imperil, or even impact, reorganization. Further, to enjoin NBSC requires an adversary proceeding. Fed. R. Bankr. P. 7001(7).

For these reasons the Court need not reach the issue of relief from stay under §362(d)(2) as to the Kokolis property. The stay is simply inapplicable to that property.

## CONCLUSION

The stay imposed by § 362(a) is inapplicable to the Kokolis real property. The motion of NBSC for relief from the stay as to the Riverfront property is denied, without prejudice to any change in circumstances. Effective June 1, 2009 Riverfront shall pay to NBSC, as adequate protection, $8,000 per month together with one-half of its net profits (beginning with those for the month of May 2009) after expenses of the kind and similar to those set forth in Exhibits D and E at trial. Riverfront shall, without undue delay, move forward to borrow funds and redeem its real property from the pre-bankruptcy property tax sale. Riverfront shall also set aside sufficient funds to pay the 2009 property taxes on or before the first due date and shall so pay them. The adequate protection payments required by this order shall be due on the 1st day of the month and past due unless in NBSC's hand on the 15th. Notice of the failure to comply shall be given to Riverfront's counsel and this motion may be renewed upon non-compliance or upon any material change in circumstance.

AND IT IS SO ORDERED